

## NUMBER 13-13-00423-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**OFFICE OF THE ATTORNEY GENERAL
OF TEXAS,** **Appellant,**

**v.**

**JOSE GUADALUPE DURAN,** **Appellee**.

---

**On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, the Office of the Attorney General of Texas, appeals from the trial court's judgment that appellee, Jose Guadalupe Duran, pay nothing in back child support. By one issue, appellant contends that "[t]he trial court abused its discretion when it ordered that [appellee,] be released from a child support arrearage judgment in contravention of

Texas Family Code section 161.005." *See* TEX. FAM. CODE ANN. § 161.005 (West, Westlaw through 2013 3d C.S.) (permitting a man to terminate the parent-child relationship if paternity was previously established without the benefit of genetic testing and a misrepresentation caused the man to believe that he fathered the child). We affirm.

## I. BACKGROUND

After the trial court, without hearing evidence, concluded that Duran's paternal rights to the child be terminated and that Duran was not required to pay any past arrearages of child support, appellant filed a motion for new trial. The trial court granted appellants' motion and held a hearing on June 12, 2013. At this hearing, the trial court asked Duran a few questions, heard oral argument from the attorneys, and admitted E.U.'s deemed admissions into evidence.[1]

In addition, Duran's trial counsel argued that under its inherent powers, the trial court could determine under the doctrine of equity that Duran should not have to pay the child support arrearages. Specifically, Duran's trial counsel urged that E.U. had lied to Duran about his paternity and that she should not benefit from that lie because the child was now an adult, and any award of child support would go to E.U. Appellant countered that even in the case of fraud, the statute requires that the man who has terminated his parental rights pay all child support arrearages.

The trial court took the case under advisement, and on July, 8, 2013, it signed an order finding that E.U. committed fraud "by claiming that [Duran] was the biological father of [the child] when [E.U.] knew that [Duran] was not the father of the child and obtaining

---

[1] Duran was ordered to pay child support to the mother of the child, E.U.

2

a child support court order ordering [Duran] to pay child support for a child that he is not legally obligated to support." The trial court made the following findings of fact:

The court finds that on February 7, 2013 this court entered an order terminating the parental rights of [Duran] as to [the child] based on DNA evidence that excluded him as the father of said child. The court also ordered that child support arrearages be set aside.

On February 26, 2013, the Texas Attorney General filed a motion for new trial claiming that the Texas Family Code § 161.005(i) did not affect [Duran's] obligations for support of the child incurred before the date of termination. The State did not object to the termination of the parental rights.

On April 8, 2013, this court granted a new trial solely limited to the issue of child support arrearages.

The court finds that as of September 15, 2012, total arrearages amounted to $29,876.59 which is being paid at $350.00 per month by [Duran].

The court finds the following based on deemed admissions of [E.U.] admitted into evidence without objection.

(i)     [E.U.] knew that [Duran] was not the father of [the child] at the time that she was born.

(ii)    [E.U.] failed to name [Duran] as the father of [the child] in her certificate of birth.

(iii)   [E.U.] mislead [Duran] into believing that he was the father of [the child].

(iv)   [E.U.] knew that [Duran] was not the father of [the child] at the time that she sought child support in the State of Michigan.

(v)    [E.U.] had sexual relations with other men at the time [the child] was conceived.

(vi)   [E.U.] was not truthful to the Michigan Court naming [Duran] as the father of [the child].

(vii)   [E.U.] failed to disclose to the child support offices in Michigan and Texas when she knew or should have known that [Duran] was not the father of [the child].

(viii)   [E.U.] committed fraud in informing the child support offices in Michigan and Texas that [Duran] was the father of [the child] when she knew that he wasn't.

Therefore, the Court finds that [E.U.], the mother of the child subject to this suit, has committed fraud by claiming that [Duran] was the biological father of [the child] when she knew that he was not the father of the child and obtaining child support court order ordering [Duran] to pay child support for a child that he is not legally obligated to support.

The trial court ordered that "based on the guiding principles of equity, . . . the current balance owed by [Duran] to [E.U.] on child support arrearages is $0.00." The trial court ordered that Duran pay E.U. $0.00 for the child support arrearages. This appeal followed.

## II.   DISCUSSION

By its sole issue, appellant contends that the trial court abused its discretion by concluding that Duran did not have to pay the child support arrearages incurred prior to termination of the parent-child relationship because, among other things, the plain language of section 161.005(i) requires that the trial court leave in place the arrearages accrued as of the date of the termination order.[2] *See* TEX. FAM. CODE ANN. § 161.005. Duran responds that E.U. should not be allowed to profit from her fraud and that the trial court had authority, under principles of equity, to order that he pay nothing in child support arrearages. Duran argues that allowing collection of the child support arrearages violates public policy and principles of equity.

## A.   Standard of Review

---

[2] Appellant does not challenge the termination of Duran's parental rights to the child.

4

An order regarding child support will not be overturned unless the trial court clearly abused its discretion. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. A trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion.

*Office of the Attorney Gen. v. Buhrle*, 210 S.W.3d 714, 717 (Tex. App.—Corpus Christi 2006, pet. denied) (internal citations omitted).

## B.    Section 161.005 of the Texas Family Code

Under Texas law, a man who was misled into believing that he was the biological father of a child may petition the court to terminate the existing parent-child relationship. *See* TEX. FAM. CODE ANN. § 161.005(c)(2).  Under section 161.005(c), the man who files a petition to terminate the parent-child relationship, must allege facts that show that (1) he is not the genetic father of the child, and (2) he failed to contest his parentage at the prior hearing or signed an acknowledgment of paternity because, based on misrepresentations, he believed that he was the child's genetic father.  *Id.*  Once the trial court determines that the man has made a prima facie case for termination of the parent-child relationship by doing the above, the trial court must order genetic testing.  *Id.* § 161.005(f).  The trial court must then terminate the parent-child relationship if the genetic tests exclude the man as the child's genetic father.  *Id.* § 161.005(h).  The statute requires that once the parent-child relationship has been terminated under 161.005(h), the man no longer has an obligation to pay *future* child support.  *Id.* § 161.005(i) (emphasis added). In addition, it states, "The order *does not affect the petitioner's obligations* for support of the child incurred *before that date.  Those obligations are enforceable until satisfied* by any means available for the enforcement of child support other than contempt."  *Id.* (emphasis added).

## C. The Texas Uniform Interstate Family Support Act ("UIFSA")

The UIFSA codified in the family code sets out the procedures for enforcement of foreign child support orders. *Buhrle*, 210 S.W.3d at 717. Specifically, section 159.604(a) states that:

> (a) Except as provided by Subsection (d), the law of the issuing state governs:
>
> > (1) the nature, extent, amount, and duration of current payments under a registered support order;
> >
> > (2) the computation and payment of arrearages and accrual of interest on the arrearages under the support order; and
> >
> > (3) the existence and satisfaction of other obligations under the support order.

TEX. FAM. CODE ANN. § 159.604(a). Subsection (d) states,

> After a tribunal of this or another state determines which order is the controlling order and issues an order consolidating arrearages, if any, the tribunal of this state shall prospectively apply the law of the state issuing the controlling order, including that state's law on interest on arrearages, current and future support, and consolidated arrearages.

*Id.*; *Buhrle*, 210 S.W.3d at 717.

UIFSA "provides that a party may register an out-of-state support order or income-withholding order in Texas for enforcement. Registration of another state's support order occurs when the registering party files the order with Texas's registering tribunal, which enforces the order just as if a Texas court originally issued it." *Buhrle*, 210 S.W.3d at 717. A non-registering party who opposes registration of the out-of-state support order in Texas must request a hearing within twenty days. *Id.* In addition, "[c]onfirmation of a registered order precludes further contest of the [out-of-state] order with respect to any

6

matter that could have been asserted at the time of registration. *Id.* (citing TEX. FAM. CODE ANN. § 159.608).

Here, the trial court concluded that based on the guiding principles of equity, Duran is not responsible for any child support arrearages because under common law fraud, E.U. misrepresented to Duran that he was the child's father and Duran relied on that misrepresentation. The trial court found that a Michigan court had ordered Duran to pay the child support and that E.U. had not been truthful to the Michigan court when she named Duran as the father. No evidence was presented that this Michigan child support order had been registered in Texas or that Texas had authority to enforce this order pursuant to the UIFSA. *See id.* Thus, there is nothing in the record to establish that Duran was precluded from contesting the Michigan order on the basis of fraud. *See id.* at 718 (concluding that the mother could not contest the validity or enforcement of the foreign state's child support order because the order had been confirmed in Texas). In addition, the trial court was required to look at Michigan law to determine the amount of arrearages owed. *See id.* (citing TEX. FAM. CODE ANN. § 159.604(a)(2)). Accordingly, the trial court was precluded from applying section 161.005(i) because it is Texas law and here the child support order was issued under Michigan law. *See id.* Moreover, appellant provided no evidence that under Michigan law, a father who petitions to terminate the parent-child relationship due to fraud is obligated to pay past child support or that Michigan has a statute such as 161.005(i). Thus, we cannot conclude that the trial court abused its discretion when it determined that section 161.005(i) does not apply in this case and applied his inherent equitable powers to determine that due to E.U.'s fraud,

7

Duran owes no past child support.[3] *See id.* (applying Georgia law to a case involving a Georgia child support order). We overrule appellant's sole issue.

### III.  CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
28th day of May, 2015.

---

[3] Appellant does not argue, in the alternative, that the trial court abused its discretion by applying equitable principles if section 161.005(i) does not apply.